IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Exhibit Network International, Ltd., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:19-cv-4221 |
| | § | |
| Union Insurance Co., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

This insurance coverage dispute arising from damage allegedly caused by Hurricane Harvey is before the Court on Defendant's Motion for Summary Judgment. ECF 32. Having considered the parties' submission and the law, the Court recommends that Defendant's Motion be GRANTED in part and DENIED in part.[1]

**I. Background**

This case involves an insurance claim for property damage allegedly caused by Hurricane Harvey. Plaintiff purchased an insurance policy (the Policy) from Defendant to insure property located at 3434 Lang Road, Houston, Texas 77092 (the Property). Plaintiff alleges that wind and rain from Hurricane Harvey damaged the Property's roof, flashings, and interior. Defendant contends that the alleged damage is not covered by the policy because it was not caused by Hurricane Harvey.

In March 2017 and before Hurricane Harvey, Plaintiff retained Pyramid Water Proofing, Inc. to inspect the Property roof. Pyramid described the roof condition as follows:

> The roof membrane appears to be in fair condition given the age of the roof. The exact age of the roof is unknown but is expected to be at least 18 years old. Minimal

---

[1] The District Court referred this case to the Magistrate Judge for pretrial management. ECF 22.

> leaks were reported at the time of the site visit. Replacement should be considered in the near future but is not immediately required. The existing condition of the roof does allow for maintenance repairs but major repairs would be discouraged due to cost.

34-4 at 2; ECF 33-14 at 3; ECF 34-15 at 7. Plaintiff did not replace the roof at that time. Hurricane Harvey stuck the Houston area beginning on August 25, 2017. An owner of Plaintiff, Leonard Maartens, visited the property four days later, on August 29, 2017, to assess the damage to the building. ECF 33-2 at 3. He discovered water damage in the northwest corner of the building in an area with a pre-Harvey roof leak, a new leak in the shop area, and wet ceiling tiles and a wet floor upstairs. *Id.;* ECF 33-14 at 3. Plaintiff engaged in a roughly three-hour process to clean up the water upstairs, put fans down and dry the flooring out. ECF 33-11 at 3. Plaintiff never covered the roof with a tarp or other covering. ECF 33-13. Plaintiff called a contractor friend for advice and decided "to just keep an eye on it." ECF 33-2 at 3. He did not file a claim at that time because the damage "wasn't super detrimental." ECF 34-8 at 6. Maartens testified that after they replaced the ceiling tiles and dried everything out following Hurricane Harvey, there was no further leaking until the fall of 2018 when another heavy rain caused leaking in the same area. ECF 34-7 at 4; 34-8 at 7. Maartens then called Image Roofing to inspect the roof. *Id.* A representative of Image Roofing advised Maartens to contact his insurer and recommended a public adjuster with Sovereign Adjusting Services. ECF 34-7 at 5; ECF 34-8 at 2; ECF 33-7 (notice to insurer of retention of Sovereign). Plaintiff submitted its Property Loss Notice to Defendant on November 21, 2018, approximately 15 months after Hurricane Harvey. ECF 33-6.

On December 4, 2018, Defendant's adjuster, Rusty Mechler, inspected the Property. Mechler observed "signs of normal deterioration and/or wear and tear" but no signs of storm damages and recommended denial of the claim without payment. ECF 34-13 at 1-3. Plaintiff's public adjuster disagreed. *Id.* On December 26, 2018, Defendant retained a professional engineer,

Jason Watson of ProNet Group, Inc., to inspect the Property. Watson also determined that the Property was not damaged by Harvey. ECF 34-5 (Watson Engineering Report). Defendant denied Plaintiff's claim based on the conclusions of its adjuster and professional engineer, explaining that "[t]he damage found to the roof is not covered under the policy since this damage is a result of wear and tear and/or lack of maintenance. The interior water damage is not covered since it did not first enter through an opening created by wind, hail, or any other covered cause of loss." ECF 33-12 at 3 (February 19, 2019 denial letter).

Plaintiff sued Defendant in state court in September 2019 and Defendant removed the case to this court based on diversity jurisdiction. Subsequent to the Court's rulings on Defendant's motion to dismiss, the claims remaining in the case are: breach of contract; violation of the Texas Insurance Code § 541.060(a)(7); violation of Texas Deceptive Trade Practices Act ("DTPA") (to the extent the claim is based on violations of Texas Insurance Code § 541.060(a)(7)); and common law bad faith (to the extent the claim is based on an unreasonable investigation).[2] Defendant has moved for summary judgment on all claims.

## II. Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). If the party moving for summary judgment bears the burden of proof on an issue he must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If a moving party who

---

[2] Plaintiff brought claims under additional sections of the Texas Insurance Code and TDTPA, but the Court dismissed them on Defendant's motion for failure to state a claim. ECF 27.

does not bear the burden of proof meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex*, 477 U.S. at 325).

**III. Analysis**

To succeed on its breach of contract claim, Plaintiffs must show "1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff." *Fieldtech Avionics & Instruments, Inc. v. Component Control.com, Inc.*, 262 S.W.3d 813, 825 (Tex. App.–Fort Worth 2008, no pet.) (citation omitted). Defendant argues it is entitled to summary judgment on Plaintiff's contract

claims because Plaintiff did not provide prompt notice of loss as required by the Policy and has not met its burden to allocate purportedly covered damages from non-covered damages. With respect to Plaintiff's extra-contractual claims, Defendant argues it is entitled to summary judgment because no covered loss or independent injury exists and Plaintiff cannot demonstrate that Defendant's investigation was unreasonable.

### A. Prompt Notice of Loss

Defendant argues Plaintiff failed to perform its contractual obligation to give "prompt notice of the loss or damage" to the covered property. ECF No. 33-1 at 83-84 (Policy provision E.3, "Duties in the Event of Loss of Damage"). Defendant contends it is entitled to a judgment of no liability because a policy provision requiring prompt notice "is a condition precedent, the breach of which voids policy coverage." ECF 32 at 12 (quoting *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 611 (Tex. App.–Dallas 2006)). Under Texas law, before a Defendant may void coverage based on a failure to provide prompt notice, it also must demonstrate it was prejudiced by the delay. *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636–37 (Tex. 2008) ("We hold that an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."). However, when a policy contains a ***specific*** [rather than prompt or reasonable] notice requirement in an endorsement, the insurer is relieved of the burden of demonstrating prejudice from the delay in order to void the policy. *Blanco W. Props. v. Arch Specialty Ins. Co.*, No. H-18-0897, 2018 WL 6573117, at *4 (S.D. Tex. Oct. 5, 2018).

Defendant asserts it need not demonstrate prejudice from the delay because Plaintiff failed to give notice of loss within the specific one-year period contained on a Policy Endorsement. *Id.* at 94. Yet, the one-year notice requirement is contained in a Policy Endorsement that applies only to "loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as

5

defined by the Texas Insurance Code." As support for the application of the one-year notice period in this case, Defendant relies on the September 1, 2017 "Official Order of the Texas Commissioner of Insurance," which, pursuant to TEX. INS. CODE § 542.059, declared Hurricane Harvey a "catastrophe" for the purpose of claims processing.  ECF 33-9 (stating as a finding of fact: "The reasons the insurer is unable to process the claims within the statutorily required time is because the significant volume of claims generated by this event will exceed the capacity of the insurer's local resources to process the catastrophe event claims in addition to processing its day-to-day claims.").  As Plaintiff points out in its Response, the one-year notice provision applies only to properties located within a "*catastrophe area*" for loss or damage caused by windstorm or hail pursuant to Texas Insurance Code and Plaintiff's property is not included within that defined area:

> A "catastrophe area" is a specific area designated by the Insurance Commissioner under Section 2210.062 of the Texas Insurance Code. The designated catastrophe areas have been in place for many years, and Plaintiff's property is not in a catastrophe area, nor has it ever been. The result of this is that contrary to Defendant's attempt to shift the burden to Plaintiff, the burden still rests with Defendant to show that Plaintiff's delay in filing its notice of claim was unreasonable as a matter of law ***and*** that Defendant was prejudiced, neither of which Defendant can do.

ECF 34 at 5 (internal citations omitted); ECF 34-14 (Texas Department of Insurance Designated Catastrophe Areas Map).  Defendant has presented no evidence demonstrating that Plaintiff's property is located in a "catastrophe area" designated under Section 2210.062 of the Texas Insurance Code.  The order declaring Hurricane Harvey a "catastrophe" for purposes of claims processing does not trigger the one-year notice provision applicable to loss or damage within a "catastrophe area" as defined under Section 2210.062 of the Texas Insurance Code.  Therefore, the specific one-year notice provision does not apply and the general "prompt notice" provision in Section E.3 of the Policy governs the timing of Plaintiff's notice to Defendant.

Because the policy does not define "prompt" notice, Texas courts construe the phrase to mean "notice must be given *within a reasonable time* after the occurrence of the damage." *Hamilton Properties v. Am. Ins. Co.*, 643 F. App'x 437, 440 (5th Cir. 2016) (emphasis in original; citations omitted). "While generally a question of fact, reasonableness becomes a question of law if the facts are undisputed." *Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 76 (5th Cir. 2015) (citations omitted). Plaintiff contends it was not aware of the roof damage resulting from Harvey until the fall of 2018 when heavy rains caused substantial leaks. According to Plaintiff, "[i]t was not until Mr. Marteens hired a public adjuster that [Plaintiff] was told the damage to [the] roof was caused by winds from Hurricane Harvey." ECF 34 at 15. Based on this evidence, the Court cannot find as a matter of law that a reasonable jury could not return a finding that Plaintiff's notice to Defendant in the fall of 2018 was "within a reasonable time after the occurrence."

However, even if the Court were to find as a matter of law that the timing of Plaintiff's notice was not within a reasonable time after the occurrence, Defendant must still show prejudice from the late notice in order to avoid liability for property damage under the policy. *Ridglea Estate Condominium Ass'n v. Lexington Inc. Co.*, 415 F.3d 474, 480 (5th Cir. 2005) (insurer required to show prejudice to raise defense of breach of prompt notice provision in property insurance policy.); *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 349 (5th Cir. 2012) ("[I]n order for an insured's breach to defeat coverage, the breach must prejudice the insurer in some tangible way."). The recognized purposes of a prompt notice of claims provision are "to allow the insurer to investigate the incident close in time to the occurrence, while the evidence is fresh, and so that it may accurately determine its rights and liabilities under the policy (and take appropriate remedial action)." *Alaniz*, 626 F. App'x at 78. "[T]he recognized purposes of the notice requirements form the boundaries of the insurer's argument that it was prejudiced." *Berkley Reg'l*

7

*Ins. Co.*, 690 F.3d at 348. Whether an insurer has suffered prejudice is generally a question of fact. *St. Paul Guardian Ins. Co.v. Centrum G. S. Ltd.,* 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003).

As evidence that it was prejudiced by a lack of prompt notice, Defendant has submitted the Declaration of Ikram Addus, an Assistant Vice President of Property Claims for Defendant. Addus's Declaration states:

> [The] over one-year delay in reporting Plaintiff's claim prejudiced Union's investigation because Union could not inspect the insured property at the time of the alleged damages. Union was denied access to critical evidence such as the condition of the roof immediately after the August 25, 2017, event and potential witnesses that may have had information relevant to the alleged damages to the roof. Further, due to the delay in reporting the loss, the extent and amount of damage, if any, to the alleged property undoubtedly increased during Plaintiff's extended delay in reporting the claim.

ECF 33-10 at 3-4. Addus identifies the "critical evidence" as "the condition of the roof immediately after the August 25, 2017 event." Addus does not identify any "potential witnesses" from whom Defendant was unable to obtain evidence or whose memory was lapsed. Addus does not identify any intervening events that likely changed the condition of the roof. The record is devoid of any evidence that either Melcher (the adjuster) or Watson (the ProNet engineer) felt that intervening events hindered their investigation.

Plaintiff has presented the report of Peter de la Mora, a professional engineer, stating that after comparing the condition of the roof observed during his 2019 inspection, the condition report of Image Roofing from March 2017 before the storm, the condition report of ProNet from 2019, and documented wind conditions during Harvey, it is his opinion that Hurricane Harvey damaged the roof. ECF 34-3, 34-4. In addition, Maartens gave testimony regarding the condition of the building and roof as he observed it on August 29, 2017. The Court finds that de la Mora's report and Maarten's testimony are sufficient to create a fact issue as to whether the 15-month period

8

between Hurricane Harvey and Plaintiff's notice of its loss prejudiced Defendant's ability to investigate the cause of the damage, accurately determine coverage, or take appropriate action.

### B. Duty to Segregate Damages

"Under the doctrine of concurrent causation, when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril." *Farmers Group Ins., Inc. v. Poteet*, 434 S.W.3d 316, 326 (Tex. App.–Fort Worth 2014) (citations omitted). Concurrent causation is not an affirmative defense but a coverage issue; therefore, when a defendant introduces evidence of the existence of non-covered losses, the burden is on the insured to segregate its covered losses. *Guzman v. State Farm Lloyds*, 456 F. Supp. 3d 846, 857 (S.D. Tex. 2020) (it was insured's burden at the summary judgment stage "to produce evidence to segregate out the portion of damage caused by wind, which is a covered event, from wear and tear, which is not."). Segregation of damages is generally an issue of fact and warrants summary judgment only where the insured "fails to present any evidence regarding allocation." *Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp. 3d 539, 548 (N.D. Tex. 2015).

Defendant has presented summary judgment evidence demonstrating that, at the time of Hurricane Harvey, Plaintiff's roof had pre-existing damage, wear and tear, and was approximately eighteen years old. Defendant also presented the testimony of Fred Lupfer of SAS, who prepared an estimate for replacement of the roof and other repairs, confirming that he did not do any evaluation of what caused any of the damage noted in his estimate.[3] ECF 33-5, 33-19. On the other hand, Plaintiff's expert De la Mora compared the March 2017 Pyramid Roofing condition report, the SAS estimate from November 2018, the ProNet assessment from 2019, and reports of

---

[3] The full SAS estimate is not in the record, but it is clear from Lupfer's testimony that it is itemized with some particularity. *See* ECF 33-20 at 4 (discussing line item 83 for floor damage and item 88 for replacement of a window).

wind conditions during Harvey in forming his opinion that the roof membrane and flashing were damaged by wind during Harvey.[4] ECF 34-3 at 12. In addition, Maartens testified from a layman's perspective about his knowledge of the pre-existing leak compared to new leaks and damage that appeared after Harvey. The Court concludes that Plaintiff has met its summary judgment burden to present some evidence on which a jury could allocate losses caused by pre-existing damage and losses caused by Hurricane Harvey, if any.

### C. Extracontractual Claims

Texas Insurance Code §541.060(a)(7) prohibits an insurer from "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." Plaintiff has presented no evidence demonstrating Defendant's investigation was unreasonable. In fact, Plaintiff did not respond to Defendant's argument on this point, and with respect to the extra-contractual claims replied only to Defendant's argument that they fail in the absence of a covered loss. *See* ECF 34 at 21.

Defendant has presented summary judgment evidence demonstrating it sent an adjuster and a professional engineer to inspect the Property and based its decision denying coverage on the results of those inspections. Plaintiff has presented no evidence showing either inspection was performed in an unreasonable manner. In addition, Defendant cites the following testimony from Maartens:

> Q: Did anything happen "in the adjustment of your claim that was . . . so wrong, so offensive, so inappropriate in what the insurance company did, other than having denied your claim?"
>
> A: "I would say no. . . . "I know that in March I had a company come out and do a roof inspection. And I had never had any problems with the roof, other than

---

[4] Defendant makes a conclusory assertion in its Reply that De la Mora, a professional engineer who personally inspected the roof, has not been qualified as an expert. ECF 35 at 7 n.1. Defendant did not file a *Daubert* motion to exclude De la Mora's testimony and has given the Court no reason why it may not consider the report on summary judgment.

the northwest side. Now after Harvey, I have problems. So that's my problem. That's where I don't agree with the insurance company. Why now do I have problems? So, that's my beef. And that's it."

ECF 33-15 at 3. Plaintiff disagrees with Defendant's adjuster's and engineer's conclusions and with Defendant's decision to deny the claim. However, the record reveals nothing more than a bona fide dispute over coverage. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) ("Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith."). Therefore, Plaintiff's claims under the Texas Insurance Code, Texas DTPA, and for common law bad faith should be dismissed on summary judgment.

## IV. Conclusion and Recommendation

For the reasons discussed above, the Court recommends that Defendant's Motion for Summary Judgment (ECF 32) be DENIED as to Plaintiff's breach of contract claim and GRANTED as to all of Plaintiff's extra-contractual claims.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on May 25, 2021, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge